**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

WILLIAM M.,[1]
     Plaintiff,

        v.                         Civil No. 3:20cv377 (EWH)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
     Defendant.

**MEMORANDUM OPINION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act. William M. ("Plaintiff"), forty-six years old at the time of his benefits application, last worked as an asphalt paving machine operator and as a cook. (R. at 833.) Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine, as well as chronic obstructive pulmonary disease. (R. at 826.) Plaintiff asserts that his back pain renders him unable to work on a sustained basis. (R. at 859.)

Plaintiff filed his initial application for benefits in 2011, and following two appeals to this Court, on January 28, 2020, an Administrative Law Judge ("ALJ") entered a partially favorable decision finding Plaintiff disabled as of his fiftieth birthday, but denied Plaintiff's application for benefits prior to that date. (R. at 560-82, 834-35, 975-1002.) This matter now comes before the

---

[1]     The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2]     On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff now seeks review of the ALJ's decision, arguing that (1) the ALJ applied an incorrect legal standard in evaluating Plaintiff's subjective complaints and that substantial evidence does not support the ALJ's analysis of Plaintiff's subjective complaints, and (2) the ALJ improperly evaluated the opinions of Plaintiff's treating physicians. (Pl.'s Brief in Supp. of Mot. For Summ. J. 9-19, ECF No. 15 ("Pl.'s Mem.").) For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14), GRANTS Defendant's Motion for Summary Judgment (ECF No. 16), and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On October 21, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability due to degenerative disc disease of the cervical and lumbar spine, and pain in Plaintiff's leg and neck. (R. at 52, 60, 169-71.) The Social Security Administration denied Plaintiff's claim initially on January 20, 2012, and again upon reconsideration on March 26, 2012. (R. at 68-71.) After Plaintiff requested a hearing before an ALJ, a hearing was held on August 6, 2013. (R. at 20-51, 115.) On August 13, 2013, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 7-19.) Plaintiff requested review of the ALJ's

---

[3]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Memorandum Opinion, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

decision, and on October 3, 2014, the Social Security Administration Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-3.)

Plaintiff then filed an appeal with this Court. (R. at 552-55.) On September 4, 2015, the Honorable David J. Novak, then-United States Magistrate Judge, issued a Report and Recommendation, concluding that the ALJ erred by not assigning specific weight to Dr. Shimer's opinion but did not err in assessing Plaintiff's credibility. (R. at 560-82.) On October 22, 2015, United States District Court Judge John A. Gibney adopted the Report and Recommendation and remanded the case back to the Commissioner for further consideration. (R. at 556-57.)

The ALJ held a second hearing on June 14, 2016. (R. at 498-532.) After propounding interrogatories to a vocational expert, the ALJ held a supplemental hearing on September 22, 2016. (R. at 487-97, 743-52, 757-59.) On September 30, 2016, the ALJ issued a second written decision concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 470-80.) Plaintiff requested review of the ALJ's decision, and on July 17, 2017, the Social Security Administration Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 460-63.)

Plaintiff then filed a second appeal with this Court. (R. at 973-74.) The Honorable David J. Novak issued a Report and Recommendation on August 24, 2018, concluding that the ALJ erred by failing to reconcile a discrepancy between the ALJ's residual functional capacity determination and the state agency physicians' opinions, but did not err in assigning partial weight to Dr. Shimer's opinion. (R. at 973-1002.) On September 10, 2018, United States District Judge Henry E. Hudson adopted the Report and Recommendation and remanded the case back to the Commissioner for further consideration. (R. at 972.)

The ALJ held a third hearing on November 20, 2019. (R. at 844-913.) On January 28, 2020, the ALJ issued a partially favorable decision. (R. at 824-35.) The ALJ found that prior to his fiftieth birthday, Plaintiff was not disabled because he could perform other work that existed in significant numbers in the national economy. (R. at 833-34.) However, following Plaintiff's fiftieth birthday in August 2015 when Plaintiff's age category changed to closely approaching advanced age, Plaintiff was disabled because he no longer had transferable skills. (R. at 834-35.) The Appeals Council did not assume jurisdiction over the case, rendering the ALJ's decision as the final decision of the Commissioner for the purposes of this appeal. §§ 404.984(a), 416.1484(a). Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

### III. THE ALJ'S DECISION

On November 20, 2019, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 844-914.) On January 28, 2020, the ALJ issued a partially favorable written opinion. (R. at 824-35.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 825-35); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental

limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of October 1, 2011. (R. at 826.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar and cervical spine and chronic obstructive pulmonary disease. (R. at 826.) At step three, the ALJ determined that neither of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 827-28.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, and the findings of treating and examining health care providers. (R. at 828.) Based on this evidence the ALJ determined that Plaintiff retained the ability to perform sedentary work with the following limitations:

> [Plaintiff] can lift and carry 10 pounds frequently and 20 pounds occasionally; sit six (6) hours total in an eight (8) hour workday; stand and walk two (2) hours total in an eight (8) hour workday; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds, frequently balance; and, occasionally stoop, kneel, crouch, and crawl. The claimant can have frequent exposure to extreme cold, occasional exposure to humidity and wetness, and occasional exposure to dust, odors, fumes, and other pulmonary irritants. Further the claimant will be off task three (3) to five (5) percent of each eight (8) hour workday due to pain and other symptoms.

(R. at 828.) The ALJ explained this determination by summarizing the evidence in the record and holding that the objective medical findings in the record demonstrated that Plaintiff had functional limitations that were not as severe as Plaintiff alleged. (R. at 828-33.)

Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform his past relevant work. (R. at 833.) The ALJ concluded that Plaintiff's limitations prevented him from performing any of his past relevant work. (R. at 833.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 833.) The ALJ found that beginning in August 2015—on the claimant's fiftieth birthday and the date that Plaintiff's age category changed—Plaintiff has been unable to transfer job skills. (R. at 833.) However, weighing the testimony of the vocational expert, the ALJ found that prior to his fiftieth birthday, Plaintiff could have performed the requirements of sedentary, unskilled occupations such as addresser, document preparer, and surveillance system monitor. (R. at 833-34.) Accordingly, the ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, before his fiftieth birthday, Plaintiff could have made a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 834.) The ALJ, therefore, concluded that Plaintiff was not disabled prior to August 2015, but became disabled on the date of his fiftieth birthday and continued to be disabled through the date of the ALJ's written decision. (R. at 835.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's partial award of benefits arguing that the ALJ erred in evaluating Plaintiff's subjective complaints and that the ALJ improperly evaluated the opinions of Plaintiff's treating physicians. (Pl.'s Mem. at 9-19.) For the reasons set forth below, the ALJ did not err in denying Plaintiff's application for benefits.

### A. The ALJ Did Not Err in Evaluating Plaintiff's Subjective Complaints and Substantial Evidence Supports the ALJ's Conclusions.

Plaintiff first argues that the ALJ applied incorrect legal standards in evaluating Plaintiff's subjective complaints. (Pl.'s Mem. at 10-14.) Second, Plaintiff argues that the ALJ's assessment of Plaintiff's subjective complaints is unsupported by the record, and that substantial evidence, including Plaintiff's physicians' opinions, actually supports a finding of disability. (Pl.'s Mem. at 14-18.) In response, Defendant contends that the ALJ's decision "makes clear" that the ALJ applied the correct legal standards in evaluating Plaintiff's subjective complaints, and that substantial evidence supports the ALJ's credibility determination. (Def.'s Mot. For Summ. J. and Br. in Supp. Thereof 16-20, ECF No. 16 ("Def.'s Mem.").)

After step three of the ALJ's analysis, but before making a determination whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. §§ 404.1545(a), 416.945(a). Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [the claimant's] ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.920(a)(4)). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. §§ 404.1545(b)-(c), 416.945(b)-(c). The residual functional capacity formulation must incorporate impairments supported by objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. §§ 404.1529(a), 416.929(a).

When evaluating a claimant's subjective complaints of pain in the context of a residual functional capacity determination, the ALJ must follow a two-step analysis. §§ 404.1529(a), 416.929(a); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The first step of the *Craig* analysis requires the ALJ to determine the existence of an underlying medically determinable physical or

mental impairment or impairments that could reasonably produce the claimant's alleged pain or other symptoms. §§ 404.1529(b), 416.929(b); *Craig*, 76 F.3d at 594. This threshold determination requires a showing, by objective evidence, "of the existence of a medical impairment 'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. Only after this threshold determination may the ALJ proceed to the second step and evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* at 595.

At the second step, the ALJ determines the extent to which the pain impairs the claimant's ability to work, which requires the ALJ to consider objective medical evidence and other objective evidence, as well as the claimant's allegations. *Id.* "Although a claimant's allegations about [his or] her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he or] she suffers." *Id.* In considering Plaintiff's subjective complaints, the ALJ must consider "all of the available evidence," §§ 404.1529(a); 416.929(a), including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms . . . as well as the factors set forth in [the] regulations." SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016); *see also* § 404.1529(c) (listing factors to consider, such as activities of daily living; the location, duration, frequency, and intensity of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms).

1. *The ALJ Did Not Apply an Incorrect Legal Standard in Evaluating Plaintiff's Subjective Complaints.*

Plaintiff argues that the ALJ committed two legal errors in weighing Plaintiff's subjective complaints: first, by discrediting Plaintiff's subjective complaints solely because they were unsupported by the objective medical evidence, and second, by requiring that the record "fully support" Plaintiff's subjective complaints. (Pl.'s Mem. at 10-14.)

Here, in pronouncing Plaintiff's residual functional capacity, the ALJ explained that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 828.) The ALJ concluded that Plaintiff's impairments could reasonably be expected to cause Plaintiff's symptoms and that "diagnostic testing has supported diagnoses for the claimant's alleged symptoms." (R. at 829, 832.) The ALJ determined, however, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are *not fully supported* for the reasons explained in this decision [and that] they are inconsistent with the totality of the evidence of record." (R. at 829 (emphasis added).) In support of this conclusion, the ALJ detailed Plaintiff's "long history of chronic neck, back, and lower extremity pain" and extensively detailed the objective medical evidence, Plaintiff's response to treatment, and the opinion evidence. (R. at 829-32.) The ALJ found that Plaintiff's allegations were not consistent with or supported by "consistent findings of normal gait, sensation, and strength on physical examinations throughout the over eight years since his alleged onset date." (R. at 832.) The ALJ explained that Plaintiff's pain improved with medication and that Plaintiff had little problems with his activities of daily living. (R. at 830-32.) Moreover, although Plaintiff had declined surgery due to fear, the ALJ explained that Plaintiff experiences relief of his pain symptoms and mobility after physical therapy sessions. (R. at 832.)

Here, with respect to Plaintiff's first argument, Plaintiff asserts that the ALJ discredited Plaintiff's subjective complaints based upon: 1) normal findings upon physical exam, and 2) Plaintiff's physical therapy records from 2019. (Pl.'s Mem. at 11.) Plaintiff contends that because the 2019 physical therapy records are not relevant to the period the ALJ found Plaintiff not disabled,[4] the ALJ only relied upon Plaintiff's normal findings, which is impermissible under the regulations. (Pl.'s Mem. at 10-12); *see Arakas*, 983 F.3d at 95 (noting that an ALJ "may 'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them" (quoting SSR 16-3p, 2016 WL 1119029, at *5 )). In doing so, argues Plaintiff, the ALJ violated the mandates of the regulations and *Craig*. (Pl.'s Mem. at 10-12 (citing *Craig*, 76 F.2d at 595).)

Contrary to Plaintiff's assertion, the ALJ did not rely solely on Plaintiff's normal findings. Although the ALJ referenced the relatively normal findings upon examination as failing to corroborate Plaintiff's complaints, she also relied on other evidence to discredit Plaintiff's subjective complaints. Specifically, the ALJ noted that Plaintiff's improvement in pain with medication and Plaintiff's activities of daily living were inconsistent with Plaintiff's subjective complaints. (R. at 832.) The ALJ relied on Plaintiff's reports to his providers that his pain was better controlled upon taking Neurontin and that increasing his Neurontin dose continued to help improve Plaintiff's pain. (R. at 829-30 (citing R. at 373-74, 391-95).) Additionally, relying on Plaintiff's own testimony and two function reports, the ALJ explained that Plaintiff had "no problems with personal care or grooming needs, taking his medications, doing light household

---

[4]     Plaintiff's argument necessarily requires the Court to first conclude that the ALJ relied on the physical therapy records in error because those records are not relevant to the period at issue. The Court need not reach that issue, however, because, as explained below, the ALJ relied on other evidence within the relevant period.

chores, driving a car, [and] shopping in stores." (R. at 832.) Accordingly, by describing Plaintiff's improvement in pain with medication and Plaintiff's daily activities, the ALJ relied on more than just the objective medical evidence to support her credibility determination and did not employ an overly restrictive standard of law.

As for Plaintiff's second argument, Plaintiff contends that the ALJ applied an incorrect legal standard by stating that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not *fully supported* for the reasons explained in this decision." (R. at 829 (emphasis added); Pl.'s Mem. at 12.) Plaintiff asserts that the ALJ's "demand that [Plaintiff's] statements be 'fully' supported is a much more exacting standard which allows the ALJ to isolate and merely point out a discrete piece or pieces of evidence which, perhaps, do not support [Plaintiff's] claims." (Pl.'s Mem. at 13.) However, reading the ALJ's decision as a whole, it is clear that the ALJ did not require that Plaintiff's statements be "fully supported" by the record. *See Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) ("We must read the ALJ's decision as a whole").

The ALJ first explained that she "considered all symptoms and the extent to which these symptoms *can reasonably be accepted as consistent* with the objective medical evidence and other evidence." (R. at 828 (citing §§ 404.1529, 416.929, and SSR 16-3p, 2016 WL 1119029).) Subsequently, in evaluating Plaintiff's statements, the ALJ explained that she found "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms . . . inconsistent with the totality of the evidence in the record." (R. at 829.) Accordingly, the ALJ did not effectively require that Plaintiff's statements be "fully supported" by the record or otherwise employ an incorrect legal standard in evaluating Plaintiff's subjective complaints. As explained in further detail below, the ALJ properly considered the totality of the evidence, and extensively detailed Plaintiff's medical

records, subjective complaints, and the medical opinion evidence in reaching her credibility determination. (*See* R. at 829-33.)

    2.  *Substantial Evidence Supports the ALJ's Credibility Analysis.*

Plaintiff next argues that the ALJ's assessment of Plaintiff's subjective complaints is unsupported by the record and that substantial evidence actually supports a finding of disability. (Pl.'s Mem. at 14-18.) After considering the medical evidence, medical opinions, and Plaintiff's range of daily activities, the ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his pain were "inconsistent with the totality of the evidence in the record." (R. at 829.) As previously explained, the ALJ relied on Plaintiff's relatively normal findings upon examinations, as well as other objective medical evidence, and Plaintiff's activities of daily living to support this conclusion.

"[W]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Carpenter v. Berryhill*, No. 3:17cv248, 2018 WL 3385191, at *12 (E.D. Va. May 31, 2018) (quoting *Eldeco, Inc. v. N.L.R.B.*, 132 F.3d 1007, 1011 (4th Cir. 1997)). Thus, "[w]hen the ALJ appropriately considers all relevant factors, hears the claimant's testimony and observes his demeanor, the ALJ's credibility determination deserves [] deference." *Id.* (citing *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)). "Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless 'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *Eldeco, Inc.*, 132 F.3d at 1011).

Substantial evidence supports the ALJ's assessment of Plaintiff's credibility. With respect to the objective medical evidence, diagnostic testing initially revealed that Plaintiff had a herniated disc. (R. at 313-14.) Plaintiff's pain was initially treated with medication, including Neurontin,

which helped to control his symptoms. (R. at 391.) Upon subsequent examinations, Plaintiff had only mild tenderness, exhibited a normal or only mildly decreased range of motion, normal strength, and normal reflexes. (R. at 377, 379, 392, 394, 446.) Plaintiff initially declined steroid injections, but he ultimately obtained epidural steroid injections in his back, although they did not provide durable relief. (R. at 389, 391, 768.) MRIs of Plaintiff's lumbar spine in May 2012 and April 2013 demonstrated some degenerative changes. (R. at 420-22, 443-44.) Although MRIs exhibited degenerative changes to his lumbar spine, Plaintiff generally demonstrated a normal range of motion, limited tenderness to palpation on his lumbar spine, normal gait, normal strength, normal sensation, and negative straight leg raise tests. (R. at 374, 446-47, 768-69, 778, 784, 786, 788.)

Plaintiff's providers recommended surgery, but Plaintiff initially declined due to fear. (R. at 447, 769-70.) Plaintiff was advised that smoking cigarettes could cause adverse outcomes should he elect to undergo surgery, and he was directed to quit smoking immediately. (R. at 446-47.) Despite these warnings, Plaintiff continued to smoke up to ten cigarettes per day. (R. 775-76, 778, 780, 785.) Medical records also indicated that Plaintiff did not want to undergo surgery and instead drank alcohol to alleviate his pain. (R. at 1130-31 (reporting that Plaintiff drank six to eight beers per day and more on the weekend to cope with pain).)

Throughout Plaintiff's alleged onset date and the date of the ALJ's decision, treatment notes from Plaintiff's providers demonstrated that his symptoms were exacerbated by standing and walking, and alleviated with sitting. (R. at 373, 375, 768.) Additionally, Plaintiff indicated in his function reports and pain questionnaires that his pain increased with standing and walking but was relieved while sitting. (R. at 213-14, 218-225.) Although Plaintiff's symptoms were not totally

14

alleviated through medication, he did report that his pain was better controlled with Neurontin. (R. at 373, 391, 829.)

Plaintiff's activities of daily living also support the ALJ's credibility determination. Specifically, the ALJ stated that:

> [Plaintiff] reported he has no problems with personal care or grooming needs, taking his medications, doing light household chores, driving a car, shopping in stores, handling money, getting along with others, following instructions, paying attention, and handling stress or changes in routine. He further indicated his hobbies include hunting and fishing, but he is not able to do them as often because of his back pain.

(R. at 832.) Plaintiff indicated in a December 2011 function report that he eats breakfast, takes his medicine, watches television, and sits because standing makes his back hurt. (R. at 223-24.) In a May 2011 function report, Plaintiff stated that he waits for his medicine to kick in, and then depending on how he feels, will try to cut the grass or work in his yard. (R. at 279.) If Plaintiff experienced pain while cutting the grass, he stopped for a while and then started again when he felt better. (R. at 281.) Plaintiff could also take out the trash as needed and shopped for about thirty minutes once per week. (R. at 2781-82.) Plaintiff explained that he does not hunt and fish "to[o] often" but did not state that he could not partake in those activities any longer. (R. at 283.)

Thus, the ALJ considered the objective medical evidence, Plaintiff's daily activities, and evidence from Plaintiff's physicians to support her conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's pain was not consistent with the totality of the evidence in the record. (R. at 829.) The ALJ explained "taking into account all of these factors, the undersigned finds [Plaintiff] has been capable of performing, at most, a reduced range of sedentary work," the most limited type of work possible. (R. at 829.) Given the ALJ's discussion of the objective medical evidence, Plaintiff's daily activities, and the medical opinion evidence, the ALJ identified substantial evidence—evidence which "a reasonable mind

might accept"—to support her conclusion. *Pearson*, 810 F.3d at 207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir.2005) (per curiam)). While Plaintiff contends that substantial evidence in fact favors finding Plaintiff disabled, it is not Plaintiff's role, nor this Court's role, to reweigh conflicting evidence. *Arakas*, 983 F.3d at 95; *see also Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court.").

Accordingly, substantial evidence supports the ALJ's credibility determination, and remand is not warranted on this ground.

## B.  The ALJ Did Not Err in Evaluating Dr. Shimer's Opinion, But Made a Harmless Error in Evaluating Dr. Broaddus's Opinion.

Plaintiff argues that the ALJ erred in evaluating the opinions of Drs. Shimer and Broaddus. (Pl.'s Mem. at 18-21.) Specifically, Plaintiff contends that Drs. Shimer and Broaddus were both Plaintiff's treating physicians, and the ALJ failed to give their opinions controlling weight. (Pl.'s Mem. at 18-21.) In response, Defendant asserts that the ALJ was not required to afford Drs. Shimer and Broaddus's opinions controlling weight. (Def.'s Mem. at 20-23.)

In general, an ALJ must consider all medical opinions in the record. §§ 404.1527(c), 416.927(c). Medical opinions are statements by a medical source about the nature and severity of a claimant's impairments, or about a claimant's functional limitations. §§ 404.1527(a)(1), 416.927(a)(1). An opinion provided by a treating source, however, is given special significance by the regulations. §§ 404.1527(c)(2), 416.927(c)(2). A treating source is a "medical source who provides you, or has provided you, with medical treatment or evaluation *and* who has, or has had, an ongoing treatment relationship with you." §§ 404.1527(a)(2) (emphasis added), 416.927(a)(2). An "ongoing treatment relationship" occurs when:

[T]he medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

§§ 404.1527(a)(2), 416.927(a)(2).

Under the "treating physician rule," an ALJ must give a medical opinion from a treating source controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence." §§ 404.1527(c)(2), 416.927(c)(2); *see Arakas*, 983 F.3d at 106 ("[A treating physician's] opinion *must* be given controlling weight *unless* it is based on medically unacceptable clinical or laboratory diagnostic techniques or is *contradicted* by the other substantial evidence in the record."); SSR 96-2p, 1996 WL 374188 (July 2, 1996).[5]

The opinions of treating physicians are given more weight, in part, because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture" of the claimant's medical impairments. §§ 404.1527(c)(2), 416.927(c)(2). If a physician's opinion is "not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. The regulations do not require that the ALJ accept opinions from a treating source in certain situations, such as when the source opines on the issue of whether the claimant is disabled for purposes of employment—an issue reserved

---

[5]     Effective March 27, 2017, the Social Security Administration rescinded SSR 96-2p and what is known as the "treating physician rule." 82 Fed. Reg. 5844-01, at 5844-45, 5854-55 (Jan. 18, 2017). Plaintiff filed his application for benefits in 2012, before the Social Security Administration rescinded the rule. (R. at 585, 587.)

for the Commissioner—or when the opinion otherwise lacks support. §§ 404.1527(c), (d), 416.927(c), (d).

If a medical opinion is not entitled to controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering the following factors: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. §§ 404.1527(c), 416.927(c).

Generally, a reviewing court should not disturb an ALJ's decision regarding the weight given to a medical opinion "absent some indication that the ALJ has dredged up 'specious inconsistences,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn*, 607 F. App'x at 267 (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992) and § 404.1527(d) (1998)).

### 1. The ALJ Properly Considered Dr. Shimer's Opinion.

Dr. Shimer began treating Plaintiff in August 2011 for chronic back pain. (R. at 378.) During his initial visit, Dr. Shimer noted that Plaintiff's back pain worsened with standing and walking, and improved while Plaintiff was seated. (R. at 378.) Plaintiff reported that physical therapy and pain medication had not alleviated his symptoms. (R. at 378.) Upon physical examination, Dr. Shimer found that Plaintiff was not in acute distress, did not have any tenderness, had full strength and sensation, as well as normal reflexes. (R. at 379.) Noting that conservative treatment failed to alleviate Plaintiff's pain, Dr. Shimer ordered an MRI. (R. at 379.) In August 2012, Plaintiff reported that he was experiencing worsening pain and had not experienced any

alleviation of his symptoms. (R. at 447.) Upon physician examination, Dr. Shimer found that Plaintiff had good strength and sensation. (R. at 447.) Dr. Shimer recommended surgery, and Plaintiff told Dr. Shimer that he wished to "hold off" on surgery. (R. at 447.)

The following year, in 2013, Plaintiff again saw Dr. Shimer complaining of right leg pain. (R. at 446.) Dr. Shimer's notes from the examination reflect that Plaintiff demonstrated no tenderness, full strength in his lower extremities, and a normal gait. (R. at 446.) Dr. Shimer again recommended surgery but expressed concern because of Plaintiff's cigarette use. (R. at 446.) Dr. Shimer also clarified that he did not support Plaintiff's disability claim, stating: "I did describe to [Plaintiff] that in general [I] do not support long-term disability and any surgical intervention would be performed to get him back to work and I would not support disability postoperatively past about the 3 month postop time." (R. at 446.)

After considering Plaintiff's medical history including Dr. Shimer's notes, the ALJ explained that:

> The undersigned affords partial weight to this opinion. Dr. Shimer did not provide specific opinions as to the claimant's functional capabilities or limitations. Further, his indication that he would not support long-term disability is supported by the claimant's history of conservative treatment and the overall consistently benign findings upon physical examinations. Overall, the issue of disability remains one reserved for the Commissioner, not a medical source.

(R. at 830.)

The ALJ did not err by affording only partial weight to Dr. Shimer's opinion. Dr. Shimer's assessment, taken from his treatment notes of Plaintiff, involved two opinions: (1) a recommendation that Plaintiff should have back surgery, and (2) that he did not support long-term disability. Importantly, Dr. Shimer did not opine regarding any of Plaintiff's functional limitations. With respect to the opinion that Plaintiff's condition would require surgery, the ALJ recognized elsewhere in his opinion that surgery was recommended, stating that "[t]he undersigned also

accepts that surgery has been recommended as all conservative measures have failed and the claimant has declined due to fear." (R. at 832.) Thus, although the ALJ did not explicitly indicate that she afforded controlling weight this portion of Dr. Shimer's opinion, the context of the opinion makes clear that the opinion was accepted. (*See* R. at 832.)

Plaintiff contends that Dr. Shimer's opinion that Plaintiff required surgery should give rise to an inference that Dr. Shimer thought that Plaintiff would be "unable to work in any capacity." (Pl.'s Mem. at 16.) But, Dr. Shimer's treatment notes do not warrant such an inference. Dr. Shimer did not opine about Plaintiff's work capabilities at all, and even if Dr. Shimer opined that Plaintiff was totally disabled, the ALJ would not be required to consider such an opinion as the ultimate disability determination is reserved for the Commissioner. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Further, any suggestion by Plaintiff that a need for surgery is synonymous with disability would require the Court to speculate whether Dr. Shimer would have found Plaintiff unable to work for a continuous twelve-month period—a finding that Dr. Shimer did not explicitly make. Such involvement by the Court is outside the scope of review. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656,662 (4th Cir. 2017); *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province . . . to engage in these exercises in the first instance.") (internal citation omitted).

Regarding Dr. Shimer's second opinion—that he did not support long term disability for Plaintiff—the ALJ properly determined that conclusion was reserved for the Commissioner. (R. at 830 (citing §§ 404.1527(d), 416.927(d)).) Thus, other than Dr. Shimer's opinion regarding Plaintiff's disability status, the ALJ generally accepted Dr. Shimer's opinion.

Plaintiff also contends that the ALJ failed to recognize Dr. Shimer's opinion that Plaintiff "has a high-grade lumbar stenosis at L3-L4 and L4-5 causing central, lateral recess and neural foraminal stenosis. He has very a little back pain [sic] but very consistent right buttock and leg pain in an L5 distribution." (Pl.'s Mem. at 17 (citing R. at 446).) However, the ALJ specifically cited this treatment record, stating "[Plaintiff] reported very little back pain, but consistent right buttock and leg pain in an L5 distribution." (R. at 830.) The ALJ's recitation of this record makes clear that he considered it in evaluating Dr. Shimer's opinion and Plaintiff's residual functional capacity as a whole. Accordingly, the ALJ sufficiently considered all of Dr. Shimer's opinions and treatment notes.

In sum, by fully crediting Dr. Shimer's opinion regarding the nature and severity of Plaintiff's condition, the ALJ did not err in evaluating Dr. Shimer's opinion.

2. *The ALJ Erred in Evaluating Dr. Broaddus's Opinion, but the Error was Harmless.*

Plaintiff saw Dr. Broaddus on one occasion in September 2015, with the intention of getting a second opinion for his low back and leg pain. (R. at 768.) Plaintiff recounted his history of back and leg pain to Dr. Broaddus, including his past treatment with various medications and injections. (R. at 768.) Upon physical examination, Dr. Broaddus noted that Plaintiff appeared to be in moderate distress caused by his pain while standing upright. (R. at 769.) Plaintiff also had a mild difficulty with tandem gait and experienced some back pain with flexion extension movements. (R. at 769.) Dr. Broaddus recommended Plaintiff proceed with surgery. (R. at 769.)

In reviewing Dr. Broaddus treatment notes, the ALJ detailed Dr. Broaddus's findings upon physical examination, and Dr. Broaddus's evaluation of Plaintiff's MRI from August 2015. (R. at 831.) The ALJ further recognized that Dr. Broaddus recommended surgical intervention. (R. at 831.) However, the ALJ failed to assign any specific weight to Dr. Broaddus's opinion. (R. at 831.)

Contrary to Plaintiff's assertion, Dr. Broaddus was not a treating physician, and his opinion was not entitled to any controlling weight. Other than a single visit with Dr. Broaddus for a second opinion in September 2015, Plaintiff never returned to Dr. Broaddus for additional evaluation or treatment. A single visit is generally insufficient to establish an "ongoing treatment relationship." *See* §§ 404.1527(a)(2), 416.927(a)(2); *see also Mullins v. Colvin*, No. 1:12-CV-00036, 2013 WL 4598553, at *7 (W.D. Va. Aug. 29, 2013) (explaining that a one-time assessment "does not 'provide a detailed, longitudinal picture'" of [plaintiff's] impairments (quoting § 416.927(c)(2))).

However, although Dr. Broaddus was not a treating physician, he was a medical source who opined about the nature and severity of Plaintiff's condition. *See* § 404.1527(a)(1) (defining a medical opinion as a statement from a medical source that reflects judgments about the nature and severity of the claimant's impairments). As such, the ALJ was required to explain the weight given to Dr. Broaddus's opinion, and erred by failing to do so. § 404.1527(c).

"When confronted with an error committed by the ALJ, the Court must determine whether to apply the harmless error doctrine." *Gorrell v. Saul*, No. 3:18cv538, 2019 WL 3939065, at *16 (E.D. Va. July 31, 2019) (citing *Mascio*, 780 F.3d at 639; *Sharp v. Colvin*, 660 F. App'x 251, 252 (4th Cir. 2016)). To determine whether an error is harmless, the court must look to "the likelihood that the result would have been different" had the ALJ not erred. *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 411 (2009)). The burden of establishing that an error was harmful falls on the "the party attacking the agency's determination." *Shineski*, 556 U.S. at 409.

Here, the ALJ's failure to assign weight to Dr. Broaddus's opinion was harmless. Dr. Broaddus merely opined that he recommended surgery for Plaintiff's condition, which is precisely the same as Dr. Shimer's opinion. (*Compare* R. at 769 (Dr. Broaddus recommending Plaintiff

proceed with surgical decompression), *with* R. at 447 (Dr. Shimer offering Plaintiff surgery).) As previously explained above, the ALJ did not err in evaluating Dr. Shimer's opinion that Plaintiff's condition required surgery, and therefore there is no indication that the ALJ's decision would have been different had she assigned specific weight to Dr. Broaddus's opinion. Because Dr. Broaddus provided an opinion that was not substantially different from Dr. Shimer's opinion, the ALJ's failure to assign Dr. Broaddus's opinion weight was a harmless error.

Accordingly, although Dr. Broaddus's opinion was not entitled to controlling weight given his non-treating physician status, Dr. Broaddus was a medical source and the ALJ should have assigned his opinion specific weight. Nonetheless, that error was harmless because Dr. Broaddus's opinion, which only recommended Plaintiff undergo surgery, was no different than Dr. Shimer's opinion—which the ALJ properly considered.

## V. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's Motion for Summary Judgment (ECF No. 14), GRANTS Defendant's Motion for Summary Judgment (ECF No. 16), and AFFIRMS the final decision of the Commissioner.

An appropriate Order consistent with this Memorandum Opinion shall be issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

/s/

_____
Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: September 8, 2021

23